Good morning, Your Honors. I'm Rachel Wilson for Maximino Buenaventura and Juan Pablo Orquiza, plaintiffs' appellants. And there's no one on the other side. I'm sorry, I can't hear you, Your Honor. There's no opposing counsel. There is no opposing counsel. You may proceed. Who can be held liable for unpaid wages? The Fair Labor Standards Act tells us that many people can actually be liable for unpaid wages, possibly even multiple employers and multiple individuals. The FLSA is unique and alone in its breadth in telling us who an employer is. Not the common law, not Title VII, not ERISA. None of those laws are as broad as the Fair Labor Standards Act. The Fair Labor Standards Act is special and alone in defining the employment relationship so broadly. What is the precise language in the FSLA that you rely upon for an expanded definition of employer? The precise language is an employer is any person acting directly or indirectly in the interest of an employer. And that's found at 29 U.S.C. 203d. And so in this case, when we're trying to decide whether or not Mr. Bellow was an individual employer to plaintiffs, it's important to remember that breadth in the statute, because that's where it all comes back to. The Ninth Circuit only has two cases on individual employer liability. And both of those cases have used the Bonnet test as a test for determining what the economic reality of the circumstances is, so we can tell whether or not the person in question is, in fact, an employer. The thing is, the Bonnet test — Could we go back to 203d? Yes. I don't think you gave us the full text of 203d. As I read it, it says, includes any person acting directly or indirectly in the interest of an employer. You said that much, but you did not say in relation to an employee. That is correct, Your Honor. In relation to an employee. Well, isn't in relation to an employee rather significant? And if you're the president of a company with 5,000 employees, and two of those 5,000 bring a case, you never met them, you had nothing to do with them, you never hired them, you never fired them, isn't there an issue with respect to whether the president is acting in relation to an employee? I don't believe so, Your Honor, because there's no question that the plaintiffs in this case were employees. For example, they weren't independent contractors. Well, that's not the issue. The issue is whether Mr. Bellow is an employer within the meaning of that statute. Your Honor, I believe that it's still not a problem because as the beginning part of the question, as the beginning part of the sentence says, any person acting directly or indirectly in the interest of an employer to an employee. No, no, in relation to an employee. You seem to be resisting the words in relation to. I'm sorry, Your Honor. What is the relation between Mr. Bellow and the plaintiffs in this case, Mr. Oquiso and Mr. Bonaventura? Mr. Bellow is acting indirectly in the interest of the employer towards the employee.  In relation to the employee. But you're not responding to my concern about whether you've established that Mr. Bellow was acting in relation to these employees whom he never met, never hired, never fired. That is true. Again, I believe he was acting indirectly in the interest of the employer in relation to the employee. Well, that's just a statement. I'm saying what is the evidence that he, in fact, acted in relation to these two employees? The evidence is that the economic reality of the situation shows that he was in control of their employment. Well, economic reality is a very vague concept. What's the evidence that he was in control of these two employees? It is a very vague concept, but that is the test that the circuit uses to show the relationship between employer and employee. And the facts that show the economic reality of the situation is that he was the sole employer. He was the sole owner. He had 100 percent ownership interest in the company. No one else did. He was the president, secretary, treasurer of the corporation. He was all of that. There's no controversy with respect to that. My focus, and what's giving me some concern, is what was his connection, even indirectly, what was his connection to these two employees? His connection is that by virtue of the fact that he was the one person with ultimate responsibility over this company, that any decision that he made affected my client's employment there. Wouldn't that be true of all corporate offices, all CEOs of large corporations? I mean, they make decisions all the time that wind up affecting employees, and I'm not sure how this would make Mr. Bellow any different from any other corporate. What makes this different is that in other corporations, power can be divided among various individuals. For example, there could be a vice president of marketing whose duty it is to take care of marketing and nothing else, and with no person above the vice president of marketing. But in this power structure. I'm sorry. In that scenario, who would be responsible? I mean, the vice president of marketing would still be, you know, indirectly responsible if he does something that affects employees. If they do something that affects the employees, yes. But in that scenario. What corporate offices do always affects employees. They make business judgments all the time, some of which are good, some of which are bad, some of which turn out poorly, some of which, you know, sometimes they may think it's appropriate to take the company into bankruptcy or to take the company public or take the company private, and all those things have consequences for the employees, just like they do for the stockholders and the consumers. I'm just not sure how you differentiate Mr. Bellow from the run-of-the-mill corporate officer. Because unlike other corporations, he was everything. He wasn't just in charge of. Well, maybe that's true, but, you know, the term indirectly is very flexible, so if you have an influence on a decision, you're still indirectly responsible. That's true. So, you know, if you have two officers, let's say there were two people responsible, let's say it was a two-person corporation, and between the two of them they did exactly all the things that Mr. Bellow did, you would say neither of them is responsible? Or you would say both of them are just responsible. Okay, there we go. You'd say both of them are responsible. And then we'd have it be a three-person corporation, and, you know, pretty soon we're at General Motors or Microsoft. And I'm just not sure where you draw the line with your reasoning. Your Honor, as many circuits have expressed over time, this is always going to be a very fact-intensive test and is always dependent on the totality of the circumstances. So while a more difficult decision might be, what do we do in a situation where power is divided among multiple individuals, this is not that case. Well, but according to you, that case would go to the jury, too. That case would go to the jury, too, because it's a fact question, and it means that corporate officers would be tied up in a select trials all the time on the question of whether or not they fall on this side of the line or that side of the line, even though their relationships with employees could be many layers removed. I disagree that it would go to the jury because it's a factual question what each person did in the corporation, and then the judge would determine whether or not that showed enough indicia of economic reality to be considered an employer. I have a lot of difficulty with your case, and I don't understand the argument you've made thus far as getting to what I consider the nerve root of the case. So I'm being critical with that up front so you'll know. The district judge took a look at the economic realities, and then he looked at the factors that we've established in Lambert, but he made a mistake. In looking at the factors on page four of his opinion, he said, he pointed out the power to hire and fire employees. That's one of the factors, power. But then when he makes his finding, he says no one hired or, Bellow didn't hire or fire anybody. And that's been overlooked, I think, in your analysis, that if you get into the actual economic realities and you get to the factor test, it talks about the power to hire and fire, but the district judge never got to the issue of whether or not he had power to hire and fire, but he only talked about whether, in fact, he hired and fired these two individuals. And the record indicates that he does have that power when he needed to have it. He had the workman's compensation insurance problem, where he worked it out as the president of the company by terminating the employment of his people and then employing him, switching him to a different company. So he had the power. Now, you don't even mention that in your argument, and yet it seems to me that's the crux of the whole case. Now, obviously, you've studied the case, and I must be off on the wrong issue here. In my analysis of the case. So why don't you tell me why it is that you did not, that you obviously didn't have this analysis in mind as appropriate, and I want to know why it isn't appropriate. Your Honor, I think you are 100% correct. Why didn't you tell us about that at the beginning? The district judge made a mistake. That is one of the mistakes that the district judge made. It's the key mistake. You don't have anything else in your case. The reason the district judge made that mistake is because later in the decision, the district judge said that there could be an inference that Mr. Bellow had the power to hire and fire, but that the district court was not willing to make that inference, because we had only shown that Mr. Bellow did not hire or fire any of my plaintiffs. The district court felt that it would be an inference to infer that he had the power to hire and fire. Where does he say that? I didn't read that in his opinion. Did he say that in his opinion? Yes, Your Honor. Okay. Give me the page number. Yes, Your Honor. Okay. You don't have the excerpt of the record here? I do, right here. But it's a very short opinion. Yeah. It is. I'm looking for it. If you're going to use electronic means of retrieving, you can at least have it booted up and ready to go. I'm sorry, Your Honor. It's already booted up. I have the opinion right in front of me. I'm just looking for it. Here we go. On page 5 of the decision. Line 11. Finally, in his deposition, Defendant Bellow repeatedly said that Waldesein hired the plaintiffs. Defendant Bellow never stated that he hired or fired any of the plaintiffs. All the undisputed evidence demonstrates that neither Defendant Bellow nor Huntington hired or fired any of the plaintiffs.  The cases do not suggest, however, that merely being an officer or shareholder subjects an individual to FLSA liability. A status-based inference of control cannot alone suffice to create a genuine issue of fact whether Defendant had the power to hire and fire. So what's the significance that you're offering on this? I don't understand your point. You've cited this passage, which I understand, but what's the significance, as you say? Judge Wallace asked why the district court — Judge Wallace brought up the point that the district court erred in saying that Bellow did not have the power to hire and fire. And I agree that the district court erred. But the reason the district court — But are you offering this passage from line 11 to line 17 as evidence of error, or what? That's — that's evidence that the reason the district court did not find that Mr. Bellow had the higher — the power to hire and fire is because the district court considered the power to be an inference. The district court refused to find from the record that Bellow had the power to hire and fire. The district court felt that to find that would be an inference. And I'm citing this passage here to explain why I believe that's — Well, is there any evidence in this record that Mr. Bellow personally could have hired or fired this individual, who is about three or four lines of managerial levels below him? Not directly, no, Your Honor. Okay. Well, you say on page 35, you briefly point out the workman's compensation problem. He, in fact, did fire people and rehired them in another organization. He had the power to do it. If — But I don't want to — If we call that hiring — yes. Yes, Your Honor. I'm not — I mean, I'm just saying I just don't understand why you're — I don't see how you're representing your client's best interest when you disagree. But that's up to you. I think I understand what you have to say. I just think you've overlooked a very important point. That's all I want to ask. Okay. Thank you. Thank you. The case is argued.
judges: Wallace, Kozinski, O'Scannlain